IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James McDermott, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 518 C.D. 2018 |
| | : | SUBMITTED: October 12, 2018 |
| Workers' Compensation Appeal | : | |
| Board (Brand Industrial Services, | : | |
| Inc.), | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED: January 18, 2019

James McDermott (Claimant) petitions for review of the March 13, 2018 Opinion and Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying Claimant benefits under the Workers' Compensation Act (Act).[1] Claimant argues the Board erred in affirming the WCJ's dismissal of his Claim and Penalty Petitions for lack of jurisdiction under Section 305.2(a)(1) of the Act, which provides in relevant part that an employee who suffers a work-related injury while working outside the territorial limits of Pennsylvania may be entitled to benefits under the Act if, *at the time of injury*, the claimant's employment is principally localized in Pennsylvania.[2]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

[2] 77 P.S. § 411.2(a)(1), added by Act of December 5, 1974, P.L. 782.

From January 12, 2016 until March 21, 2016, Claimant worked as a union carpenter for Brand Industrial Services, Inc. (Employer). Notes of Testimony (N.T.), Deposition of Michael Hufford, 8/2/16, at 28, 35. Employer provides construction services for customers located throughout the northeastern United States.[3] N.T., Deposition of David File, 8/2/16, at 6. Employer's job sites are located primarily at oil refineries, power plants, and large scale new construction projects that are owned by Employer's customers. *Id.* Employer has a permanent job site located within the confines of the Delaware City Oil Refinery in the State of Delaware. *Id.* at 7. On February 9, 2016, while working at Employer's Delaware facility, Claimant injured his right shoulder. Certified Record (C.R.), Item No. 2, Claim Petition. Claimant's injury was accepted by Employer under the applicable workers' compensation law in Delaware and Claimant received payment for medical expenses and lost wages from March 2, 2016 through September 9, 2016. C.R., Item No. 25, Delaware Workers' Compensation Payments.

On March 25, 2016, Claimant filed a Claim Petition in the Commonwealth of Pennsylvania alleging an entitlement to Pennsylvania workers' compensation benefits for the February 9, 2016 work injury.[4] C.R., Item No. 2, Claim Petition at 2. Employer filed an answer on April 22, 2016, denying Claimant's averments. *Id.*, Item No. 4, Employer's Answer to Claim Petition, at 1-2. On April 27, 2016, Claimant filed a petition requesting the imposition of penalties against Employer for failing to accept or

---

[3] Employer's business address is in Kennesaw, Georgia. Item No. 4, Employer's Answer to Claim Petition.

[4] The payment or award of benefits under the workers' compensation laws of another jurisdiction is not a bar to receipt of benefits under the Act. 77 P.S. § 411.2(b). Any benefits paid by another jurisdiction shall be credited against any benefits claimant would have been due under this Act. *Id.*

deny his claim within 21 days, as required by the Act.[5] *Id.*, Item No. 6, Penalty Petition. Employer filed an answer denying the allegations and challenging jurisdiction for any alleged work injury under the Act. *Id.*, Item No. 7, Employer's Answer to Petition for Penalties. Employer contended Claimant was not employed in Pennsylvania and jurisdiction for the alleged injury lay in Delaware. *Id.*

A hearing was held before the WCJ on April 28, 2016, at which Claimant testified on his own behalf.[6] Employer submitted the deposition testimonies of David File, Employer's Environmental Health and Safety Manager, and Michael Hufford, Site Manager for Employer's Delaware facility.

The key issue before the WCJ was whether Claimant's employment, *at the time of his injury*, was principally localized in Pennsylvania and, therefore, whether Pennsylvania had jurisdiction for Claimant's injury under Section 305.2(a)(1) of the Act. Employment is "principally localized" in Pennsylvania where an employer has a place of business in Pennsylvania and the claimant regularly works at or from that place of business, or where the claimant is domiciled in Pennsylvania and spends a substantial part of his working time in the service of his employer in Pennsylvania.[7] 77 P.S. § 411.2(d)(4)(i), (iii). Claimant had the burden of proving, by a preponderance of

---

[5] Section 406.1(a) of the Act requires the employer to promptly investigate any injury reported and commence payment of compensation no later than 21 days after the employer has notice of the injury. Added by Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(a). An employer can be liable for penalties for failing to comply with this provision. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ. and PMA Grp.)*, 942 A.2d 939 (Pa. Cmwlth. 2008).

[6] Claimant also presented the deposition testimony of his medical expert, Dr. Bradley Ferrara. As our disposition of this matter does not rely on an analysis of medical testimony, we decline to summarize it herein.

[7] The second clause of Section 305.2(d)(4), which is relevant when an employee's duties have required travel outside Pennsylvania, is not applicable to this matter.

3

the evidence, all the necessary elements of his claim. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz)*, 114 A.3d 27, 34 (Pa. Cmwlth. 2015).

Therefore, applying the appropriate evidentiary standard, Claimant had to prove that Employer had a place of business in Pennsylvania and that he regularly worked at or from that location, *or* that he was domiciled in Pennsylvania and spent a substantial part of his working time in Employer's service in Pennsylvania.

### Claimant's Testimony

Claimant testified he resides in Pennsylvania and has been a member of a local Pennsylvania carpenters' union for 28 years. N.T., 4/28/16, at 8-9. He worked "on and off" for Employer for a few years, but his most recent period of employment began in January 2015. *Id.* at 9-10. From March 14, 2015 through December 31, 2015, Claimant worked for Employer at a job site located within an oil refinery in Marcus Hook, Pennsylvania. *Id.* at 15. Claimant did not work exclusively for Employer in 2015, however, he estimated that 99% of his work days in 2015 were spent with Employer and 90% of those days were spent in Marcus Hook. *Id.* at 15-17.[8] Claimant received the Pennsylvania carpentry rate of $37 per hour for this work at Marcus Hook. *Id.* at 17. Claimant's job in Marcus Hook ended on December 31, 2015. *Id.* at 16.

On January 12, 2016, Claimant began working for Employer at the Delaware City Refinery. *Id.* at 13. Claimant obtained that position through a union hall in Delaware. *Id.* at 18. The position in Delaware was temporary and Claimant understood that, once his work was completed, the assignment would end and he would be laid off. *Id.* at 52. Claimant's pay rate for carpentry work in Delaware was approximately $28 per hour. *Id.* at 17. Although Claimant previously worked at the Delaware facility in

---

[8] The record does not identify Claimant's other employers or the dates upon which he worked for them.

4

2013 and 2014, he was required to obtain a security clearance and identification (ID) badge prior to commencing work at that location in 2016. *Id.* at 40.

On February 9, 2016, Claimant was building a scaffold when he reached for and missed a railing. *Id.* at 21. Claimant "hit the lower rail" and experienced intense pain in his right shoulder. *Id.* at 22. He notified his foreman immediately. *Id.* at 25. Claimant was treated at a hospital and released. *Id.* at 27. Claimant returned to the Delaware facility on February 11, 2016, but simply sat in a chair in an office and did not perform any work. *Id.* at 30-31. Claimant was paid in this capacity through March 21, 2016, at which point he was laid off. *Id.* at 33. At that time, Claimant was required to return his ID badge. *Id.* at 51.

### Employer's Evidence

David File testified by deposition. Mr. File stated that Employer's Delaware facility is a permanent installation within the Delaware City Refinery, N.T., Deposition of David File, 8/2/16, at 7. The Delaware facility operates on a year-round basis and employs approximately 75-85 full-time individuals who perform general maintenance work. *Id.* at 9.

Throughout the year, the Delaware City Refinery commences different projects that require the employment of additional labor. *Id.* at 9. These employees are hired on a temporary basis. *Id.* at 19. For each new project, the temporary workers that are hired are required to take a pre-employment drug test and undergo site-specific training and orientation. *Id.* at 17. A temporary employee who works at one of Employer's other locations would not automatically have the same credentials to work at the Delaware facility as "[i]t's a completely different job." *Id.* at 24. The rate paid to temporary employees is the trade rate for the State of Delaware. *Id.* at 17. Once the project is complete, temporary employees are laid off and there is no guaranteed length of employment. *Id.* at 19, 34. Claimant was hired for such a project through the

Delaware union hall. *Id.* at 18. Mr. File characterized Claimant's overall employment history with Employer in Pennsylvania as "a little sporadic" and denied Claimant was continuously employed throughout 2015. *Id.* at 30, 32.

Michael Hufford also testified by deposition. Mr. Hufford explained that the Delaware facility encompasses several buildings, which contain administrative offices, an insulator shop, paint shop, carpenter shop, storage facilities for tools and equipment, training facilities, a cafeteria, and bathrooms. N.T., Michael Hufford Deposition, 8/2/16, at 6-22. Payroll for work performed at the Delaware facility is processed and paid there. *Id.* at 28.

Mr. Hufford testified Claimant was hired after Employer contacted Delaware's carpenter union hall to request additional manpower. *Id.* at 24. In addition to pre-employment drug screening and site-specific training, Claimant was required to get clearance from the United States Department of Homeland Security (DHS). *Id.* Prior to commencing work on January 12, 2016, Claimant was also required to fill out several "new hire" forms, including an Internal Revenue Service Form W-4 for the withholding of federal income tax, an authorization for the direct deposit of pay, an acknowledgment that Claimant received Employer's employment policies, and an emergency contact information form. C.R., Item No. 23, Employer's New Employee Information Paperwork. Claimant was not considered a permanent employee. *Id.* at 33. He did not have a dedicated workspace and he was not hired for a position that would be considered year-round. *Id.* at 32. Claimant was not considered a permanent employee when he previously worked at the Delaware facility. *Id.* at 33.

## WCJ Decision

The WCJ issued his decision on February 7, 2017, and made the following paraphrased findings of fact (F.F.):

6

- Mr. Hufford and Mr. File were deemed credible and the WCJ adopted their testimonies as fact. C.R, Item No. 9, WCJ Decision, F.F. No. 13. The WCJ found Claimant credible to the extent his testimony was consistent with Mr. Hufford and Mr. File. *Id*.

- From March 14, 2015 through December 31, 2015, with the exception of four days, Claimant worked for Employer in Pennsylvania. F.F. No. 7(b). Ninety percent of this work took place in Marcus Hook, Pennsylvania. *Id*. Claimant was paid $37 per hour. *Id*.

- On January 12, 2016, Claimant began a job with Employer working at the Delaware City Refinery in the State of Delaware. F.F. No. 7(c). Claimant was hired through the Delaware union and paid $28 per hour. *Id*. Claimant completed new hire forms before starting work on January 12, 2016. F.F. No. 9(c). At no time was Claimant considered a permanent employee. F.F. No. 9(f).

- Employer's Delaware facility is a permanent work site which employs full-time year-round employees. F.F. No. 9(a). This facility has several buildings which consist of administrative offices, training and storage facilities, painting and carpentry shops, and a yard. F.F. No. 9(b). Payroll is processed and paychecks distributed from the Delaware facility. *Id.*, F.F. No. 9(d).

- Claimant suffered a work-related injury on February 9, 2016 while working for Employer in Delaware, and he was unable to perform his regular job duties as of the date of injury. F.F. No. 12. Claimant worked modified duty after his injury and was laid off on March 12, 2016 as part of a manpower reduction. F.F. No. 9(g).

- While Claimant worked for Employer at several of its job sites, his employment was not continuous, as Claimant was laid off for periods of time between jobs. F.F. No. 10(e). One such period took place between December 2015 and mid-

7

January 2016.  *Id.*  The job in Marcus Hook, Pennsylvania, was "completely different" from the job in Delaware.  *Id.*

- Claimant's working relationship with Employer in Pennsylvania ended when Claimant was laid off in December 2015.  WCJ Decision at 8.

- Claimant started a new working relationship with Employer in Delaware when he accepted a job through the Delaware union hall at a different rate of pay.  WCJ Decision at 8.  This position required new training and orientation and the completion of paperwork typical of new employment.  *Id.*

- Claimant's employment in Delaware was not the result of a transfer from Pennsylvania.  WCJ Decision at 8.  Rather, Claimant's employment in Pennsylvania ended in December 2015 when he was laid off.  *Id.*  The position in Delaware was a completely different job for which Claimant only reported to the Delaware facility.  *Id.* at 8-9.  He had no contact with any Pennsylvania job site during this time.  *Id.* at 9.

- No nexus existed between Claimant's employment in Delaware and the Commonwealth of Pennsylvania.  WCJ Decision at 8.  The WCJ noted that Section 305.2(a)(1) of the Act extends jurisdiction to an out-of-state injury if employment is principally localized in Pennsylvania "**at the time of injury**." *Id.* (emphasis in original).  However, Claimant's employment was principally localized in Delaware on the date of his injury and therefore Pennsylvania lacked jurisdiction over Claimant's workplace injury.

Based on these findings, the WCJ dismissed Claimant's Claim and Penalty Petitions.  *Id.* at 8-9.  Claimant appealed to the Board, which affirmed the WCJ.  This appeal followed.[9]

_____

[9] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights

## Issue

The sole issue presented to this Court is whether the Board erred in affirming the WCJ's determination that Claimant's employment was principally localized in Delaware and that therefore Pennsylvania lacked jurisdiction over his workers' compensation claim.

## Discussion

A claimant has the burden of proof to establish jurisdiction in Pennsylvania for his workers' compensation claim. *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.)*, 4 A.3d 742, 745 (Pa. Cmwlth. 2010). In order to meet this burden, Claimant must show by a preponderance of the evidence that (1) Employer has a place of business in Pennsylvania and that Claimant regularly works at or from such place of business, **or** (2) having worked at or from such place of business, Claimant's duties have required him to go outside of Pennsylvania for a period of not more than one year, **or** (3) if clauses one and two do not apply, Claimant is domiciled in Pennsylvania and spends a substantial part of his working time in the service of his employer in Pennsylvania. 77 P.S. § 411.2(d)(4).

For this Court to consider several distinct jobs as a single period of employment, there must be evidence of an ongoing employment relationship. *Gen. Elec. Co. v. Workmen's Comp. Appeal Bd. (Sporio)*, 615 A.2d 833, 835 (Pa. Cmwlth. 1992). An ongoing employment relationship does **not** exist where a claimant works for an employer on a per-job basis followed by a break in employment during which he works for a different employer before being re-hired by the original employer. *Greenawalt v. Workers' Comp. Appeal Bd. (Bristol Envtl., Inc.)*, 91 A.3d 305, 311 (Pa. Cmwlth.

---

were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 2 A.3d 689 (Pa. Cmwlth. 2010).

9

2014). The focus of Section 305.2 of the Act is on the claimant's employment, not on the employer. *Williams*, 4 A.3d at 745.

On appeal to this Court, Claimant argues that he met his burden of establishing Pennsylvania jurisdiction pursuant to the first and third clauses of Section 305.2(d)(4). As for the first clause, Claimant argues that Employer has a facility in Pennsylvania and he regularly worked at, or from, that facility. As for the third clause, Claimant argues that he is domiciled in Pennsylvania and spent a substantial part of his working time in Employer's Pennsylvania facility.[10] Further Claimant maintains that he had an ongoing employment relationship with Employer through his work in Marcus Hook, Pennsylvania, and that his position at the Delaware facility was not a new contract of hire, but rather "little more than an extension of [Claimant's] ongoing relationship with Employer." Claimant's Br. at 25. Claimant asserts any work performed for other employers in 2015 was "*de minimis*." *Id.* at 23.

Essentially, Claimant argues his 2015 work in Marcus Hook created an ongoing employment relationship. The job at Employer's Delaware facility was an extension of that relationship, and, consequently, his employment was principally localized in Pennsylvania. Claimant contends the relationship with Employer was such that Employer specifically sought his services for the Delaware facility, a circumstance which made Claimant a *de facto* employee.

In response, Employer denies Claimant's job at the Delaware facility was part of an ongoing employment relationship. Rather, Claimant's position at the Delaware facility was separate and distinct from prior work performed for Employer, as Claimant was required to take a pre-employment drug screening test, submit to a background

---

[10] Claimant's assertions on these two issues are unclear as he does not provide a name of the Pennsylvania facility. We assume he is referring to the Marcus Hook facility, however, there is no evidence in the record indicating that this was Employer's facility. Regardless, the record reveals that Claimant did not have an ongoing permanent relationship with Employer.

security check, participate in site-specific training in Delaware, and complete and sign new employee paperwork that was completed at the Delaware facility. Claimant's work was performed exclusively in Delaware, and he was paid the Delaware trade rate, which is different from the Pennsylvania rate for such work. Employer maintains Claimant understood that, once the project for which he was hired had been completed, Claimant would be laid off. Employer argues these facts support a conclusion that Claimant's employment was principally localized in Delaware.

Claimant cites two cases to support his assertion that he had an ongoing employment relationship with Employer, however, they are readily distinguishable.

The first is *Taylor v. Workmen's Compensation Appeal Board. (Ace Installers, Inc.)*, 543 A.2d 219 (Pa. Cmwlth. 1988). In *Taylor*, the claimant was hired in Pennsylvania by Ace Installers, Inc. (Ace), a Virginia corporation. *Id.* at 219. After completing a job for Ace in Virginia, Taylor returned to Pennsylvania where he was hired to perform work for Beacon Contractors Inc. (Beacon), another company owned by Ace. *Id.* As part of his position with Beacon, Taylor traveled to locations outside Pennsylvania, where he was responsible for hiring and supervising local work crews. *Id.* at 220. He was paid $250.00 per week, regardless of whether or not a new job was lined up. *Id.* Taylor injured his back working for Beacon at a job site located in Florida. *Id.* This Court concluded Taylor had an ongoing employment relationship with Beacon because the employment contract was consummated in Pennsylvania and the working relationship never terminated. *Id.* at 220-221. Additionally, Taylor was a permanent employee guaranteed a salary, whether or not he was working at a job site. *Id.* at 220.

Here, Claimant was not considered a permanent employee. He worked for Employer sporadically, for finite periods of time, and was given no assurances or guarantees of future work. Unlike the claimant in *Taylor*, Claimant was not guaranteed a salary when he was between jobs. When Claimant's job in Marcus Hook ended on

11

December 31, 2015, Claimant was not paid again by Employer until he was hired for a different job two weeks later. Claimant's new hire forms filled out prior to commencing the job in Delaware are indicative of his status as a new employee. When Claimant was laid off by the Delaware facility, he was required to return his ID badge. Further, while Claimant primarily worked for Employer in Pennsylvania throughout 2015, he also worked for a different employer during that calendar year, albeit for a very small percentage of his total working days.

Claimant's reliance on *Goldberg v. Workers' Compensation Appeal Board (Star Enter.)*, 696 A.2d 263 (Pa. Cmwlth. 1997), to establish a legal basis for an ongoing employment relationship is also misplaced.

In *Goldberg,* the employer operated gas stations and convenience stores in several states, including New Jersey and Pennsylvania. *Goldberg*, 696 A.2d at 264. Goldberg's contract for hire with the employer was made in New Jersey, but he spent approximately 75% of his time setting up and visiting stores in Pennsylvania. *Id.* The claimant was injured while working in one of the employer's New Jersey stores. *Id.* He subsequently filed a claim petition seeking workers' compensation benefits in Pennsylvania. *Id.* The employer opposed the claim petition, asserting Pennsylvania lacked jurisdiction over the injury. *Id.* The WCJ granted benefits on the basis that the employer's Pennsylvania stores constituted places of business within the meaning of the Act and the claimant regularly worked at or from those places. *Id.* at 265. The Board reversed, holding that, regardless of the location of the employer's individual stores, the employer's primary place of business was located in New Jersey. *Id.* This Court reversed, noting that the employer operated 10 stores in Pennsylvania, and the claimant worked at or from those stores as a rule and not the exception. *Id.* at 266-267. Consequently, the claimant's employment was principally localized in Pennsylvania. *Id.* at 267.

12

The facts here are distinguishable from those in *Goldberg*. Goldberg was a permanent employee who rarely worked in New Jersey. Here, Claimant worked solely in Delaware at the time he was injured. The temporary nature of Claimant's job in Delaware is not in dispute, and there are no facts in the record which suggest Claimant had another job lined up with Employer once the Delaware job was completed.

Far more persuasive is our decision in *Greenawalt*, which presents facts similar to the matter currently before this Court. The claimant in *Greenawalt* was a union laborer who worked for the employer, Bristol, on multiple, yet separate, occasions. *Greenawalt*, 91 A.3d at 306. These jobs were of limited duration, followed by a layoff. *Id.* At the time of his alleged injury, Greenawalt worked for Bristol on a project in Rochester, New York. *Id.* The WCJ dismissed Greenawalt's claim and penalty petitions after determining that Pennsylvania lacked jurisdiction under Section 305.2 of the Act. *Id.* at 307. The Board affirmed. On appeal to this Court, Greenawalt asserted that, although injured in New York, he was hired and trained in Pennsylvania. *Id.* He also argued that jurisdiction was proper in Pennsylvania because he previously completed over 30 jobs for Bristol in Pennsylvania. *Id.*

This Court affirmed the Board. While Greenawalt worked under a contract made in Pennsylvania, where he also resided and received training prior to working in New York, Greenawalt worked exclusively at the Rochester, New York, job site at the time he was injured until he was laid off. *Greenawalt*, 91 A.3d at 309. Further, while Greenawalt worked for Bristol throughout the year in which he was injured, he worked for other employers during those periods he was laid off from Bristol. *Id.* at 311. This Court agreed with the WCJ that no continuous employment relationship with Bristol could exist where Greenawalt's employment was on a per-job basis, followed by breaks in employment during which he worked for a different employer before being re-hired by Bristol. *Id.*

13

Here, Claimant's work for Employer is similar to that of the claimant in *Greenawalt*. Claimant performed several distinct jobs for Employer. Each of those jobs was separated by periods of time during which Claimant was laid off. Claimant worked for other employers during some of those periods of layoff, and he cites no relevant legal authority which suggests "*de minimis*" work for a different employer should be ignored in our analysis.

In concluding that jurisdiction lay in Delaware, the WCJ considered the work Claimant performed for Employer in Pennsylvania, but he determined these jobs were short-term, job-site specific and "completely different" from the job in Delaware. WCJ Decision at 8. Claimant's employment in Pennsylvania ended in December 2015 when he was laid off. *Id.* The job in Delaware constituted a new employment relationship with Employer. *Id.* Having reviewed all the testimony and weighed the evidence, the WCJ concluded Claimant was injured while working for Employer in the State of Delaware and his employment was principally localized at Employer's place of business in Delaware. WCJ Decision, F.F. Nos. 12, 14. These findings of fact were based on the credible testimonies of Mr. Hufford and Mr. File, which the WCJ adopted as fact. The WCJ, as the ultimate fact-finder in workers' compensation cases, "has the exclusive province over questions of credibility and evidentiary weight . . . ." *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. For Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010). The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25 (Pa. Cmwlth. 2005). We are bound by the WCJ's credibility determinations. *Id.*

Claimant worked several distinct jobs for Employer from 2013 through 2016, during which he experienced multiple breaks in employment. By Claimant's own admission, he worked for other employers during these times. Claimant was not

14

guaranteed future work from Employer when laid off at the end of December 2015. Consequently, Claimant has not established his work for Employer was part of a continuous period of employment.

As stated earlier, jurisdiction only lies in Pennsylvania under Section 305.2(a)(1) if *at the time of injury* a claimant's employment is principally localized in Pennsylvania. 77 P.S. § 411.2(a) (emphasis added). Here the record clearly indicates that, *at the time of injury*, Claimant worked exclusively in Delaware and that no ongoing employment relationship existed between Claimant and Employer. For this reason, Claimant's prior work for Employer in Marcus Hook, Pennsylvania, is not relevant.

For these reasons, we discern no error in the WCJ's determination that Pennsylvania lacked jurisdiction over Claimant's workers' compensation claim and conclude that Claimant's Claim and Penalty Petitions were properly dismissed. Accordingly, the Order of the Board is affirmed.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James McDermott,                          :
                    Petitioner            :
                                          :
        v.                                :   No. 518 C.D. 2018
                                          :
Workers' Compensation Appeal              :
Board (Brand Industrial Services,         :
Inc.),                                    :
                    Respondent            :

**O R D E R**

AND NOW, this 18th day of January, 2019, the Order of the Workers'
Compensation Appeal Board, dated March 13, 2018, is hereby affirmed.


_____
ELLEN CEISLER, Judge