# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Silbaugh, :
                Petitioner :
                :
          v. : No. 57 C.D. 2019
                : Submitted: August 30, 2019
Workers' Compensation Appeal :
Board (Penn Line Corporation), :
               Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: November 25, 2019**

James Silbaugh (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying Claimant's Claim Petition based on the WCJ's determination that Pennsylvania does not have jurisdiction over Claimant's work injury, which occurred in Virginia, pursuant to Section 305.2(a) of the Workers' Compensation Act (Act),[1] 77 P.S. § 411.2(a). On appeal, Claimant argues Pennsylvania has jurisdiction because his contract for hire was made in Pennsylvania, his employment was not principally localized in any state, and the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 9 of the Act of December 5, 1974, P.L. 782, 77 P.S. § 411.2(a).

WCJ's interpretation of Section 305.2(a) to conclude otherwise is inconsistent with the humanitarian purpose of the Act. Upon review, we affirm.

## I. Background

Claimant filed a Claim Petition on August 18, 2015, alleging he sustained, among other injuries, a severe crush injury to his left thigh and leg on April 29, 2015, while topping a tree for Penn Line Corporation (Employer) in Virginia. (Reproduced Record (R.R.) at 6a-7a.) Claimant resides in Pennsylvania, and Employer's headquarters are in Pennsylvania (Pennsylvania Office). Employer filed an Answer, challenging, in relevant part, Pennsylvania's jurisdiction over the work injury that had occurred in Virginia. (*Id.* at 16a.) The WCJ bifurcated the matter so as to decide the jurisdictional question first. Multiple hearings were held before the WCJ, at which both Claimant and Employer presented testimonial and documentary evidence.

### A. *Proceedings Before the WCJ*

Claimant testified twice before the WCJ as follows.[2] He lives in Pennsylvania, he interviewed with Employer in 2012 at Employer's Pennsylvania Office, and he was hired at that office to work full-time as a tree trimmer/climber. Claimant worked for Employer for a total of four years, working for about two years followed by a one-year break. His most recent work period with Employer began in September 2014 and ended in May 2015 after he was injured on April 29, 2015. Claimant explained that, consistent with his understanding of what his job would entail, he performed work for Employer in Pennsylvania, North Carolina, and

---

[2] Claimant's testimony is summarized in Findings of Fact 4 and 7 and is found at pages 86a-103a and 242a-56a of the Reproduced Record.

Virginia, and that he was sent wherever Employer had work. As part of that work, Claimant would meet his foreman in Pennsylvania on a Sunday, the four- or five-person crew would travel out of state for work, and the crew would return to Pennsylvania on Thursday. Claimant took a break from his employment for about a year in 2013 for personal reasons and returned to Employer in September 2014, at which time he had to complete a drug test and paperwork. Claimant acknowledged that, upon his return in 2014, he only worked for Employer in Virginia and that, following his work injury, he received workers' compensation (WC) benefits under a WC claim in Virginia.

Claimant later clarified that the work he believed he had performed in Pennsylvania during his initial period of employment had actually been in West Virginia. He explained that, throughout his employment, he was requested to take vehicles from Employer's Virginia locations to the Pennsylvania Office and return new vehicles to Virginia. During his most recent employment period, Claimant did this four or five times. In August 2015, Claimant received a modified duty job offer to work in the Pennsylvania Office, but was later notified that he could not work at that office due to his having a non-work-related MRSA infection. In May 2016, he returned to modified duty work in Virginia, but was assigned to a different work crew, requiring him to drive to his new foreman's home in West Virginia from which the crew left to do work in Virginia. Claimant's prior foreman advised Claimant that his prior crew was working in North Carolina. Claimant has been released to regular duty work, and he has returned to work for Employer in Virginia, but Employer has not let him work as a climber.

3

Employer presented the testimony of the lead foreman of Employer's tree division (Lead Foreman), who testified as follows.[3] Lead Foreman is employed by Employer in Virginia and supervises 14 crews. Employer has a contract with Dominion Virginia Power (Dominion) to perform tree work, such as clearing new right-of-ways, tree trimming for new power lines, and maintenance trimming for existing lines. While Employer's Pennsylvania Office is the parent office of the company, directions for work assignments come either from Employer's Ashland, Virginia office (Virginia Office) or directly from Dominion foresters. Lead Foreman never had any contact with the Pennsylvania Office about the work his Virginia crews performed and no direction regarding that work ever came from that office. Dominion's lines were in Virginia, although it had acquired lines in North Carolina on which some of Employer's crews could be directed by Dominion to work. (R.R. at 128a.) Employee paychecks and other human relations matters are handled by the Pennsylvania Office, although Lead Foreman finalized all the timesheets that were sent to that office. Lead Foreman did not hire Claimant, but he was familiar with Claimant having been Claimant's supervisor when Claimant worked for Employer from September 2014 through May 2015. During that period, Claimant worked only in Virginia.

Employer also offered the testimony of its Casualty Claims Manager (Claims Manager), who twice testified before the WCJ as follows.[4] Claims Manager works in the Pennsylvania Office and explained Claimant's work history as reflected in his work records. Claimant worked from July 16, 2012, until August 2, 2012, when he

---

[3] Lead Foreman's testimony is summarized in Finding of Fact 5 and is found at pages 113a-37a of the Reproduced Record.

[4] Claims Manager's testimony is summarized in Findings of Fact 6 and 8 and is found at pages 139a-69a and 271a-78a of the Reproduced Record.

4

left due to a work injury suffered in Virginia. He returned to work on September 4, 2012, and worked until May 19, 2013, when he left his employment to care for a sick family member and did not have enough time working for Employer to qualify for leave under the Family and Medical Leave Act.[5] Claimant had a new hire date of May 28, 2013, but was discharged for absenteeism on August 8, 2013. Claimant was rehired on September 2, 2014, and worked until April 29, 2015, the date of the work injury at issue. Claims Manager explained that, under Employer's policies, when an employee quits or is discharged and then rehired, the employee loses all of the employee's prior seniority, has a new hire date, and is considered as starting again. Further, once an employee is hired in one location, the employee cannot just switch locations under Employer's policies, but must first leave for a period of time and then get permission to move to a different location. (R.R. at 141a.) Under Employer's policies, when Claimant was rehired on September 2, 2014, Employer considered him a new employee. During that new period of employment, Claimant worked exclusively in Virginia and, even when he worked for Employer in 2012 and 2013, Claimant's work records reflected he worked only in Virginia. Every timesheet Employer had for Claimant between 2012 and 2015 reflected that he worked in Virginia. Claims Manager handled Claimant's current WC claim in Virginia, Claimant was paid Virginia WC benefits, and Claimant's medical benefits were still being paid through the Virginia claim.

### B. The WCJ Decision

Based on all of the evidence presented, the WCJ found that Claimant "had separate and distinct periods of employment with [Employer]" and "prior to his date of injury of April 29, 2015, the claimant's most recent period of employment with

---

[5] 29 U.S.C. §§ 2601-2654.

[Employer] began on September 2, 2014." (WCJ Decision, Finding of Fact (FOF) ¶ 9.) According to the WCJ, the credible testimony of Claimant and Claims Manager confirmed that Claimant was first hired in 2012, stopped working in 2013, began working for Employer again on September 2, 2014, and worked until April 29, 2015, the date of his injury. The WCJ credited Claims Manager's testimony, based on Claims Manager's familiarity with Employer's hiring and seniority policies, that Claimant lost all of his seniority and was considered a new employee when he was rehired on September 2, 2014. The WCJ found Claims Manager's

> testimony in this regard is critical to the outcome of the jurisdiction issue in this matter, because[ Claims Manager] has credibly testified, and the claimant's time records have credibly confirmed, that when the claimant worked for [Employer] from September 2, 2014 through the date of his injury on April 29, 2015, his work was exclusively performed in . . . Virginia.

(*Id.*)

Based on the testimony of Claimant and Claims Manager that Claimant only worked in Virginia between September 2014 and April 2015, the WCJ found that, at the time Claimant sustained his injury, his work was not localized in Pennsylvania, but in Virginia. (*Id.* ¶ 11.) The WCJ found that the four or five occasions Claimant moved vehicles between the Pennsylvania Office and Employer's work locations in Virginia did not alter this finding. The WCJ reasoned that "such limited work activity in Pennsylvania is insufficient to establish that the claimant's employment with [Employer] was principally localized in . . . Pennsylvania" particularly in light of the documentary evidence which reflected "that just about every job the claimant was assigned to work for the employer after he was rehired in September, 2014 was a job that involved the claimant working in . . . Virginia." (*Id.*) The WCJ acknowledged Claimant's arguments regarding the many connections between

6

Claimant's work with Employer and Pennsylvania, but held those contacts did not support a finding that Claimant's employment was principally located in Pennsylvania where almost all of the work he performed in the relevant employment period occurred in Virginia. The WCJ credited Lead Foreman's testimony that, although Employer's headquarters was its Pennsylvania Office, all of the work Claimant performed for Employer was in Virginia and all of the directions related to that work came from the Virginia Office or Dominion's foresters, not the Pennsylvania Office.

Crediting Claims Manager's and Lead Foreman's testimony, as well as Employer's documentary evidence showing where Claimant worked during the relevant period of employment, the WCJ found "that, at the time he sustained his work injury . . . , the claimant . . . was working employment principally localized in . . . Virginia." (*Id.* ¶ 12.) The WCJ determined that the WC laws of Virginia applied to Employer, as reflected by the credible testimony of Claims Manager that Claimant was paid WC benefits, pursuant to those laws, for the April 29, 2015 work injury. (*Id.* ¶ 13.)

Based on the above findings of fact and credibility determinations, the WCJ concluded that Claimant failed to meet his burden of proving that Pennsylvania had jurisdiction over his WC claim for the April 29, 2015 work injuries. (WCJ Decision, Conclusion of Law ¶ 1.) Specifically, the WCJ held that Claimant had failed to meet any of the extraterritorial provisions set forth in Section 305.2(a) that would have given Pennsylvania jurisdiction. Accordingly, the WCJ denied and dismissed the Claim Petition due to lack of jurisdiction. (*Id.* ¶ 2; WCJ Order.)

7

*C. The Board Decision*

Claimant appealed to the Board, arguing the WCJ erred in concluding that Pennsylvania lacked jurisdiction over his Claim Petition, citing *S.I. Industries v. Workmen's Compensation Appeal Board (Zon)*, 613 A.2d 170 (Pa. Cmwlth. 1992), because his employment was not principally located in any one state. Noting the WCJ's credibility determinations and factual findings, the Board affirmed. The Board held these determinations and findings supported the WCJ's conclusions that Claimant had distinct periods of employment with Employer, his employment at the time of his injury was principally localized in Virginia, and Virginia's WC laws had applied to the work injury. The Board distinguished *Zon* on the basis that, in *Zon*, the parties clearly contemplated that the claimant would work anywhere required by the employer's business needs. Here, the Board explained, no such arrangement was contemplated by Employer as established by Claims Manager's credible testimony that once Employer hired an employee for one location, the employee stayed in that location and could not move to a different location without first leaving Employer for a period of time and then obtaining permission to move to another area. (R.R. at 141a.) Accordingly, there was no error, the Board held, in the WCJ's concluding that Claimant did not meet his burden of proof under Section 305.2(a) and denying and dismissing the Claim Petition for lack of jurisdiction. Claimant now petitions this Court for review.[6]

---

[6] In reviewing a decision of the Board, "[o]ur review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated." *McDermott v. Workers' Comp. Appeal Bd. (Brand Indus. Servs., Inc.)*, 204 A.3d 549, 554 n.9 (Pa. Cmwlth. 2019).

8

## II. Discussion

### A. *The Parties' Arguments*

Claimant argues that Pennsylvania has jurisdiction over the Claim Petition pursuant to Section 305.2(a)(2), which authorizes coverage under the Act where the employee "is working under a contract of hire made in this State in employment not principally localized in any state." (Claimant's Brief (Br.) at 13 (quoting 77 P.S. § 411.2(a)(2)).) Claimant asserts there is evidence that he worked in different states, Employer contemplated moving him (and other employees) to any state in which Employer conducts its business, as reflected by Lead Foreman's testimony, (R.R. at 128a), and Employer's contract with Dominion demonstrates that Employer's employees can be assigned to work in both Virginia and North Carolina to maintain Dominion's lines. These facts, he argues, support the conclusion that his employment was not principally located in any state, including Virginia, making *Zon* directly on point. (Claimant's Br. at 21 (citing *Zon*, 613 A.2d 170).) This conclusion is further supported, Claimant contends, by the significant contacts his employment relationship with Employer has with Pennsylvania, including his residing here, Employer being headquartered here, his contract for hire occurring here, and his leaving from his foreman's Pennsylvania home for his work in Virginia, and that he was offered a modified duty position at the Pennsylvania Office.

Claimant also contends that the Act is intended to benefit injured workers and must be liberally construed in the injured worker's favor in order to effectuate the Act's humanitarian purpose. *Cytemp Specialty Steel v. Workers' Comp. Appeal Bd. (Servey)*, 811 A.2d 114, 118 (Pa. Cmwlth. 2002). Claimant argues that, contrary to this humanitarian purpose and the liberal construction requirement, the WCJ narrowly interpreted Section 305.2(a) of the Act to dismiss the Claim Petition

9

notwithstanding that it was filed by a Pennsylvania resident based on a work injury sustained while working for a company operating in multiple states with its headquarters in Pennsylvania. Such denial makes it difficult for Claimant to obtain treatment from local physicians, who do not always accept out-of-state WC benefits.

Employer responds that the WCJ's decision that Pennsylvania lacked jurisdiction because Claimant's employment was principally located in Virginia and his work injury was covered by Virginia's WC laws is supported by substantial, competent evidence in the record. Employer contends this conclusion is consistent with *Meyer v. Workers' Compensation Appeal Board (Raytheon Co.)*, 776 A.2d 338 (Pa. Cmwlth. 2001), because, as in that case, Claimant's work for Employer could not be considered continuous and, therefore, the only period of employment relevant is that beginning in September 2014. During that period, Employer asserts, Claimant worked exclusively in Virginia. Although Claimant asserts there is evidence to support the fact that his employment was not principally located in any state, the fact that "it was **possible** that the Employer **could have** sent him to job sites in other states" does not support a finding that Claimant's employment was not principally located anywhere under Section 305.2(d)(4), Employer argues. (Employer's Br. at 16 (emphasis in original).) Under that section, according to Employer, the definition of "principally located" requires two things: one, that "the employee regularly works at or from a place of business within the state," and two, "his duties **have required** him to go out of state for less than one year." (*Id.* (citing 77 P.S. § 411.2(d)(4)).) Both of these provisions are met, argues Employer, because: (1) Claimant admitted that, during the relevant period of employment, he worked exclusively in Virginia and his work assignments came from the Virginia Office; and (2) there was no evidence that Claimant had been required to work outside of

Virginia for a year or more. Accepting Claimant's argument that his employment had no principal location because Employer has a multistate operation and that at some time it was possible that he may be offered work in another state, would, Employer contends, render an absurd result.

Employer further argues that Claimant cannot establish Pennsylvania's jurisdiction, pursuant to *George Liko Co. v. Workmen's Compensation Appeal Board (Stripay)*, 616 A.2d 197 (Pa. Cmwlth. 1992), due to his work being principally localized in Virginia and his acknowledgment of receiving WC benefits in Virginia. According to Employer, Claimant's reliance in *Zon* is misplaced because that case is factually distinguishable. Employer reiterates Claimant worked only in Virginia and explains Claimant was only offered work at the Pennsylvania Office due to his work injury, employment that was certainly not contemplated when Claimant was rehired as a tree climber in September 2014. Finally, Employer argues there is no violation of the humanitarian purpose of the Act because the Act is intended to benefit the workers of this Commonwealth, and Claimant was not a worker of this Commonwealth when he was injured. Employer notes that while Claimant may be inconvenienced by the fact that his WC claim is covered by Virginia, this is a "natural consequence of a Pennsylvania resident travelling daily or weekly to work full time in a different state." (Employer's Br. at 20.)

### *B. Analysis*

Where a work injury occurs outside of Pennsylvania, a claimant bears the burden of proving that Pennsylvania has jurisdiction over the claimant's WC claim through the Act's extraterritorial provisions. *Williams v. Workers' Comp. Appeal Bd. (POHL Transp.)*, 4 A.3d 742, 745 (Pa. Cmwlth. 2010). Section 305.2(a) of the Act sets forth those extraterritorial provisions and states:

If an employe, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such employe, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that **at the time of such injury**:

(1) His employment is principally localized in this State, or

(2) He is working under a contract of hire made in this State in employment not principally localized in any state, or

(3) He is working under a contract of hire made in this State in employment principally localized in another state whose [workers'] compensation law is not applicable to his employer, or

(4) He is working under a contract of hire made in this State for employment outside the United States and Canada.

77 P.S. § 411.2(a) (emphasis added). The focus of Section 305.2(a) is the locale of a claimant's employment "at the time of [the] injury." *Id.*; *McDermott v. Workers' Comp. Appeal Bd. (Brand Indus. Servs., Inc.)*, 204 A.3d 549, 558 (Pa. Cmwlth. 2019). As used in this provision, a claimant's

> [e]mployment is principally localized in this or another state when (i) his employer has a place of business in this or such other state and he regularly works at or from such place of business, or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) and (2) of the foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

77 P.S. § 411.2(d)(4) (emphasis added). An award of WC benefits in another state does not preclude a claimant from seeking benefits in Pennsylvania, but the claimant

12

must meet the burden of proving an entitlement to such benefits under the Act. *Williams*, 4 A.3d at 745.

At issue here are subsections 305.2(a)(2) and (a)(3). The WCJ applied subsection (a)(3) to find Pennsylvania lacked jurisdiction based on the determinations that Claimant was principally employed in Virginia and Virginia's WC law applied to Employer, but Claimant argues there is jurisdiction under subsection (a)(2) because "[h]e [wa]s working under a contract of hire made in this State in employment not principally localized in any state." 77 P.S. § 305.2(a)(2). Relying on his own testimony regarding his working for Employer in states other than Virginia, as well as Lead Foreman's testimony that suggested that employees may be moved to other states when needed, Claimant argues his employment is not principally localized in any state. Claimant's argument that subsection (a)(2) applies, however, is not supported by the WCJ's factual findings or the credited evidence of record.

Where, as here, a claimant has different periods of employment with the same employer, each period will be considered distinct for Section 305.2(a) purposes unless the claimant shows the existence of a continuous employment relationship. *Meyer*, 776 A.2d at 340. The WCJ found that Claimant's employment relationship with Employer involved separate and distinct periods of employment, citing Claims Manager's credited testimony about the break in Claimant's employment between August 2013 and September 2014, that Claimant lost all of his seniority after August 2013, and that Claimant was considered a new hire when he was rehired in September 2014. (FOF ¶ 9.) As the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight . . . ." *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. For Rehab)*, 15

13

A.3d 944, 949 (Pa. Cmwlth. 2010). "The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned," and we are bound by those determinations. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 28-29 (Pa. Cmwlth. 2005). The credited testimony of Claims Manager constitutes substantial evidence[7] that supports the WCJ's finding that Claimant had distinct periods of employment and, therefore, the relevant period began on September 2, 2014.

Focusing on the relevant employment period, the WCJ found that Claimant's work was principally localized in Virginia. (FOF ¶ 11.) Pursuant to Section 305.2(d)(4), work is principally localized in a state if: (i) the claimant's "employer has a place of business in . . . such . . . state and [the claimant] regularly works at or from such place of business" or "having worked at or from such place of business, [the claimant's] duties have required him to go outside of the State not over one year." 77 P.S. § 411.2(d)(4). The WCJ based this determination on the facts that, during this time period, Claimant worked exclusively in Virginia and that work was directed from Employer's Ashland, Virginia office or from Dominion's foresters in Virginia. (FOF ¶¶ 9, 11.) These findings are supported by the credited testimony of Claims Manager and Lead Foreman, both of whom testified as such. Applying the definition of "principally localized" to the facts supported by the credible evidence, the WCJ did not err in finding that Claimant's work was principally localized in Virginia.

Claimant challenges this determination based on his testimony that he worked in other states, his four or five trips between Virginia and Pennsylvania to transport

---

[7] "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 408 n.4 (Pa. Cmwlth. 2008).

cars for Employer, and the testimony of Lead Foreman indicating that it was possible for some Virginia crews to work on Dominion lines in North Carolina. However, Claimant's challenges to the WCJ's application of Section 305.2(a)(3) are unavailing.

First, although Claimant testified about working in other states, that testimony was contradicted by the credited testimony of Claims Manager and Claimant's work records reflecting that Claimant worked only in Virginia. More importantly, even if Claimant's testimony was considered, the claimed non-Virginia work occurred prior to the distinct employment period at issue. As noted above, once Claimant began working for Employer again on September 2, 2014, his work assignments were exclusively in Virginia. Thus, that Claimant may have worked in other states during a different employment period is of no moment to whether his employment after September 2, 2014, was principally localized in Virginia.

Second, we agree with the WCJ that while there were occasions when Claimant drove a vehicle from Virginia to Pennsylvania and vice versa, these occasional job duties do not diminish the fact that Claimant regularly worked from Employer's place of business in Virginia and that every job assignment he had during the relevant period was in Virginia. Further, as pointed out by Employer, unless a claimant's "duties have **required [the claimant] to go outside of that State**" **for more than a year**, there is no change to the claimant's principal place of employment. 77 P.S. § 411.2(d)(4) (emphasis added). As four to five trips between Pennsylvania and Virginia would not meet this standard, these occasional job duties do not require a different conclusion.

Third, although Lead Foreman testified it was possible that some Virginia crews could be called to work on Dominion lines in North Carolina, there is no

evidence that Claimant ever did so in the time period at issue. The mere potential, however, that some crew of Employer's could be called to work in a different state does not mean that Claimant would be required to do so. Moreover, Claims Manager credibly testified Claimant was hired to work in Virginia and, in order for him to work in a different state, he would have to leave Employer for six months before obtaining permission to work elsewhere. "The focus of Section 305.2 of the Act is on **the claimant's employment**, not on the employer." *McDermott*, 204 A.3d at 555 (emphasis added). With that focus in mind, the above credited testimony and procedures do not support the conclusion that Claimant's employment was not principally located in any state and do not warrant reversal.

Claimant next asserts, as he did before the Board, that *Zon* requires reversal. As in that case, he argues, Section 305.2(a)(2) applies here to give Pennsylvania jurisdiction because his contract for hire was made in Pennsylvania[8] and his employment was not principally localized in any state in that it was contemplated that he would work wherever Employer's business needs required. *Zon*, however, is distinguishable.

In *Zon*, the claimant was awarded WC benefits pursuant to Section 305.2(a)(2) because the claimant's contract for hire was made in Pennsylvania and the claimant's employment was not principally localized in any state. 613 A.2d at 170. The employer, whose main office was in Pennsylvania but whose operations extended into numerous states, challenged the latter determination. The claimant worked for the employer at two locations in Ohio followed by one location in Pennsylvania between August 26, 1985, and March 7, 1986. When one job was over, the employer

---

[8] Under "the Act's place-of-contract-test, a contract is created wherever the acceptance occurs." *Zon*, 613 A.2d at 171. Here, Claimant accepted his employment with Employer at the Pennsylvania Office. Thus, his contract for hire was entered into in Pennsylvania.

16

would characterize the claimant's departure as a "termination," but the claimant began working at a different location within a matter of days, completing new paperwork each time. *Id.* at 171. Following the completion of the last job, the claimant filed a claim petition seeking temporary total disability benefits for work injuries he sustained on September 25, 1985, while working on the first job in Ohio. The employer argued the claimant was terminated after each job and, therefore, could not establish that his employment was not localized in any state. *Id.* We rejected that argument, citing the testimony of the employer's witness that the claimant was hired for the initial job and any other jobs for which the claimant was qualified, the claimant was only laid off between jobs, and the new paperwork was necessary because each job site was a separate corporation. *Id.* at 172-73. Based on that testimony, we held there was an ongoing employment relationship that contemplated that the claimant would work at multiple job sites, including in different states, and, therefore, the claimant's employment was not principally localized in any state. *Id.* at 173.

Unlike in *Zon*, the WCJ here found that Claimant had separate and distinct periods of employment with Employer, rather than an ongoing employment relationship, and that during the relevant period of employment Claimant was hired to work, and only worked, in Virginia. These findings are supported by Claims Manager's credited testimony regarding Claimant's work history and his employment that began on September 2, 2014, which reflects that Claimant was hired to work only in Virginia. Although some evidence suggested that some of Employer's crews may have been directed to work in North Carolina at some time, this does not establish that Employer and Claimant contemplated that Claimant would do so, particularly given Claims Manager's testimony to the contrary.

17

Moreover, it cannot be said that Employer and Claimant would have contemplated Claimant working a modified duty position in the Pennsylvania Office at the time he was hired as a tree climber for work in Virginia. Thus, *Zon* does not require a different result.

Claimant also attempts to establish Pennsylvania jurisdiction through the connections his employment relationship has with Pennsylvania, the fact that Employer's headquarters are in Pennsylvania, and the humanitarian purpose of the Act. However, those connections are not relevant to whether Pennsylvania has jurisdiction pursuant to Section 305.2(a). "The focus of Section 305.2 of the Act is on the claimant's employment, not on the employer," *McDermott*, 204 A.3d at 555, and, here, the credited evidence supports the findings that Claimant's employment was principally localized in Virginia. Further, Claimant's arguments based on the humanitarian purpose of the Act are not persuasive. It is not contrary to or inconsistent with the humanitarian purpose to apply the Act's provisions as written to facts that are supported by substantial evidence, even if doing so results in Pennsylvania not having jurisdiction over a WC claim.

For these reasons, we find no error in the WCJ applying Section 305.2(a)(3) to determine whether Pennsylvania has jurisdiction over the Claim Petition. Because Claimant's place of employment was principally located in Virginia, the only way Claimant could establish Pennsylvania's jurisdiction under Section 305.2(a)(3) was to prove that Virginia's "work[ers'] compensation law is not applicable to his employer." 77 P.S. § 411.2(a)(3); *see also Stripay*, 616 A.2d at 198 (under Section 305.2(a)(3), a claimant bears the burden of showing that the claimant would be denied the protections of the WC law in the state in which the employment was principally localized). However, the evidence credited, including Claimant's own

testimony, unquestionably establishes that Virginia's WC law applied to Employer and Claimant, in fact, received WC benefits in Virginia. Therefore, Claimant did not meet his burden of proving that Pennsylvania has jurisdiction over his extraterritorial injury under Section 305.2(a).

### III. Conclusion

Because the WCJ's findings of fact are supported by substantial evidence and those findings support the conclusion that Claimant did not meet his burden of proving that Pennsylvania has jurisdiction under Section 305.2(a) of the Act, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

Judges McCullough and Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Silbaugh, : 
                 Petitioner : 
                 : 
           v. : No. 57 C.D. 2019
                 : 
Workers' Compensation Appeal : 
Board (Penn Line Corporation), : 
                 Respondent : 

## **O R D E R**

NOW, November 25, 2019, the Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge