# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Malone,                                    :
                          Petitioner              :
                                                   :
              v.                                   :   No. 22 C.D. 2020
                                                   :   Submitted: September 4, 2020
Workers' Compensation Appeal                       :
Board (City of Philadelphia),                      :
                          Respondent              :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                        **FILED: January 6, 2021**


Michael Malone (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) Decision and Order (Decision), denying Claimant's Claim Petition on the basis that Claimant did not establish that he suffers from an occupational disease, as that term is defined in Section 108 of the Workers' Compensation Act (Act), 77 P.S. § 27.1.[1]  On appeal, Claimant argues the WCJ erred in denying his Claim Petition because uncontradicted evidence shows that his injury is an occupational disease, he is entitled to a presumption that his injury is work related,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1.

the WCJ accepted that he was exposed to carcinogens during his work, and the City of Philadelphia (Employer) did not rebut that presumption. Based on the credited evidence, Claimant has not established that his injury is an occupational disease entitling him to a presumption that his injury is work related, and he has not otherwise established that his injury was caused by his work. Accordingly, we affirm the Board's Order.

## I. BACKGROUND

Claimant was diagnosed with prostate cancer in October 2010. (Mar. 2, 2018 WCJ Decision, Finding of Fact (FOF) ¶ 1.n.) On May 18, 2012, Claimant filed the Claim Petition, alleging that his prostate cancer is an occupational disease caused by "[d]irect exposure to . . . carcinogens while working as a [f]irefighter" for Employer's Fire Department.[2] (Claim Petition at 1-2, Certified Record (C.R.) Item 2.) In the Claim Petition, Claimant sought medical benefits and total disability benefits for the period from May 6, 2011, to June 20, 2011. (*Id.*) Employer filed an Answer denying that Claimant suffered any injury or disease that was causally related to his employment. (Answer to Claim Petition at 1, C.R. Item 4.) It also asserted that Claimant did not provide Employer with the required notice of the injury.[3] (*Id.* at New Matter – Affirmative Defenses.)

A. *Proceedings Before the WCJ*

---

[2] Claimant also filed a Penalty Petition, which the WCJ later denied in her September 2, 2014 Decision. (Certified Record (C.R.) Items 5, 11 at 9.) Claimant did not challenge that portion of the WCJ's Decision, and, as such, the Penalty Petition is not at issue on appeal.

[3] The WCJ issued an initial decision on September 2, 2014, in which the WCJ agreed with Employer that Claimant did not provide timely statutory notice of his injury as required under Section 311 of the Act, 77 P.S. § 631, and denied the Claim Petition. On appeal, the Board reversed, concluding that Claimant had provided Employer with timely statutory notice of his injury. Accordingly, the Board remanded the matter to the WCJ for a decision on the merits. Employer does not appeal this decision by the Board, and, therefore, we will not discuss it further.

### 1. Testimony of Claimant

The WCJ held multiple hearings on the Claim Petition, at which live and deposition testimony was presented. Claimant first testified at the initial hearing held on July 2, 2012, as follows.[4] (Reproduced Record (R.R.) at 1500-01.)[5] Claimant worked for Employer from 1983 to 2011 as a firefighter and lieutenant. (*Id.* at 1503-04.) At the time he was hired, Claimant underwent a physical examination that showed no signs of cancer. (*Id.* at 1503-05.) Throughout his employment, on at least five separate occasions, he underwent similar examinations without signs of cancer. (*Id.* at 1504.) During most of his tenure with Employer, he was assigned to work at fire stations at which at least two diesel-powered vehicles were present. (*Id.* at 1505.) After Claimant joined Employer's Ladder 20 in 2009, Employer installed a system to capture diesel fuel emissions, but no such system was in place at any of Claimant's previous work locations. (*Id.* at 1506.) Claimant stated that he often noticed diesel fuel emissions present in indoor air at the stations where he worked, as evidenced by black soot on the walls and ceilings. (*Id.*) Throughout his career, Claimant was present in enclosed spaces of the firehouses while the diesel engines in the vehicles were routinely run at the beginning of each shift, and where diesel exhaust was present. (*Id.* at 1507-08.)

Claimant further testified that he has only a minimal family history of cancer, and no family history of prostate cancer. (*Id.* at 1531-33.) He smoked for approximately 30 years, but quit in 2008. (*Id.* at 1518.) Claimant responded to hundreds of fires over the course of his career with Employer. (*Id.* at 1512, 1538.)

---

[4] Claimant's testimony can be found on pages 1500-1546 of the Reproduced Record and is summarized in the WCJ's March 2, 2018 Decision in Finding of Fact ¶ 1.

[5] The Reproduced Record page numbers are not followed by a small "a" as required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173, and thus are not followed by a small "a" herein.

At many of those fires, Claimant sometimes wore a self-contained breathing apparatus (SCBA), which provides clean, breathable air to the wearer for a limited time. (*Id.* at 1509-10, 1513.) Employer's requirements for the use of SCBA, and Claimant's use thereof, increased over the course of his career. (*Id.* at 1511-13.) Throughout his career, however, there were various firefighting activities involving exposure to smoke for which Claimant was not required to wear, and did not wear, an SCBA. (*Id.*) Accordingly, Claimant testified, he endured at least some exposure to smoke without an SCBA at "[a]ll of" the fires to which he responded. (*Id.* at 1513.) Some of the fires to which Claimant responded involved exposures to polychlorinated biphenyls (PCBs) and asbestos. (*Id.* at 1521-22.) Often, soot would be present when he coughed or blew his nose, even days after responding to a fire. (*Id.* at 1514.) Claimant responded to a fire, at which he was exposed to smoke without an SCBA, one or two months before his cancer diagnosis in October 2010. (*Id.* at 1512, 1528.) In May 2011, Claimant underwent surgery to treat his prostate cancer, after which he was unable to work for a period of six weeks. (*Id.* at 1515-16.) He then retired from his work as a firefighter and did not return to work for Employer following the surgery. (*Id.* at 1516.) In June 2012, Claimant received a report prepared by Barry L. Singer, M.D., a board-certified oncologist, concerning the potential work-relatedness of Claimant's cancer. (*Id.* at 1517.) Prior to receiving Dr. Singer's report, Claimant never had been informed by a doctor that his cancer might have been related to his firefighting work. (*Id.*)

## 2. Reports of Barry L. Singer, M.D., and Virginia M. Weaver, M.D.

In support of the Claim Petition, Claimant presented two reports by physicians concerning his exposure to carcinogens at work and the potential results thereof.

4

Claimant first presented a report by Dr. Singer.[6] After reviewing Claimant's medical history, Dr. Singer concluded that Claimant's "exposure to carcinogens while working for [Employer] was a substantial contributing factor in the development of his prostate cancer." (R.R. at 3.) As to the sources of such carcinogens, Dr. Singer identified Claimant's exposure at fires to smoke, dust, and soot without an SCBA, and diesel exhaust from trucks at the stations where Claimant worked. (*Id.* at 1-2.) Smoke contains several substances identified by the International Agency for Research on Cancer (IARC) as "Group 1 carcinogens," meaning they have been definitively confirmed to cause cancer in humans. (*Id.* at 3; *see id.* at 6.) IARC Group 1 carcinogens "in smoke include arsenic, asbestos, benzene, benzo(a)pyrene, 1,3-betadiene, formaldehyde[,] and soot." (*Id.* at 3.) Additionally, common IARC Group 2A carcinogens (which are shown to be likely human carcinogens) found in smoke include creosote, PCBs, polycyclic aromatic hydrocarbons, and styrene. (*Id.*; *see id.* at 6.) Dr. Singer noted that Claimant had no family history of prostate cancer. (*Id.* at 3.) He also identified several scientific studies linking prostate cancer to firefighting. (*Id.*)

Claimant next presented a report by Virginia M. Weaver, M.D., a professor of environmental health sciences and medicine at Johns Hopkins University.[7] Dr. Weaver opined that, based on her review of research on occupational exposure, firefighters are exposed to many recognized carcinogens, including numerous IARC Group 1 carcinogens. (*Id.* at 5-8.) These exposures occur during firefighting activities where smoke is present. (*Id.* at 6-7.) Although firefighters sometimes use

---

[6] This initial report by Dr. Singer can be found on pages 1-4 of the Reproduced Record and is summarized in the WCJ's March 2, 2018 Decision in Finding of Fact ¶ 3.

[7] Dr. Weaver's report can be found on pages 5-10 of the Reproduced Record and is summarized in the WCJ's March 2, 2018 Decision in Finding of Fact ¶ 4.

5

personal protective equipment to reduce their exposure, that equipment is only partially effective even when used correctly. (*Id.* at 8-9.) Such equipment is often not used at all when firefighters are in the presence of smoke. (*Id.*) Dr. Weaver also identified diesel exhaust at fire stations and asbestos from buildings as additional means of carcinogen exposure for firefighters. (*Id.* at 6-8.) Dr. Weaver noted a study that shows increased incidence of cancer among those exposed to diesel exhaust. (*Id.* at 7.) She did not offer an opinion on the causal connection between carcinogens and prostate cancer in particular.

### 3. Report and Testimony of Tee L. Guidotti, M.D.

Employer presented the deposition testimony and report of Tee L. Guidotti, M.D., who is board certified in internal medicine, pulmonary medicine, and occupational medicine.[8] (*Id.* at 1034-35.) Dr. Guidotti also has a nonmedical degree in toxicology, has training in epidemiology, and has conducted research on cancer risk among firefighters. (*Id.* at 1035-36, 1040-42.) Dr. Guidotti evaluated and opined on Dr. Singer's methodology and the validity of his expert opinions. He stated that Dr. Singer's method for reviewing and relying on the various epidemiologic studies Dr. Singer cited was not a sufficient method for determining general causation, *i.e.*, whether a certain carcinogen is capable of causing a certain type of cancer. (*Id.* at 1084-85.) Dr. Guidotti discussed the importance of using a particular methodology when investigating whether a given agent causes a specific disease. (*Id.* at 1040, 1046-47.) Upon reviewing Dr. Singer's opinions, Dr. Guidotti could not discern any methodology employed by Dr. Singer, nor did Dr. Guidotti believe that Dr. Singer gathered enough evidence to render an opinion on the

---

[8] Dr. Guidotti's testimony and report can be found on pages 1025-1433 of the Reproduced Record and are summarized in the WCJ's March 2, 2018 Decision in Finding of Fact ¶ 5.

etiology of any particular disease. (*Id.* at 1046-47, 1053, 1098.) He also noted that IARC Group 1 carcinogens are each related to different types of cancer, and that Dr. Singer did not appear to discuss which of those listed carcinogens are related to which types of cancer. (*Id.* at 1087-90.) Dr. Guidotti opined that Dr. Singer had not sufficiently reviewed information on general causation in order to offer an opinion about specific causation, *i.e.*, the cause of Claimant's cancer in particular, which was the same opinion Dr. Singer offered in numerous other cases involving prostate cancer in firefighters. (*Id.* at 1429-30.)

Dr. Guidotti further testified that a claimant's history of smoking can present a confounding variable that inhibits the assessment of whether occupational exposures significantly contributed to the claimant's disease. (*Id.* at 1109.) Additionally, cigarette smoke contains some of the same carcinogens to which firefighters are exposed on the job and can compound the health effects of work-related exposure. (*Id.* at 1109-11.) Dr. Guidotti acknowledged, however, that a claimant's smoking history should not result in the automatic denial of a claim or the conclusion that there is no causal connection between his work and his cancer, but it should be considered to be a potentially significant causal factor. (*Id.* at 1116-17.) Concerning prostate cancer in particular, Dr. Guidotti opined that, although other types of cancer have a marked association with firefighting, prostate cancer is "much more a disease of aging than it is of external influences[,]" and he did not believe there is sufficient evidence to conclude that firefighting significantly elevates prostate cancer risk. (*Id.* at 1378-79.)

### 4. Responsive Report and Testimony of Dr. Singer

In response to Dr. Guidotti's report and testimony criticizing Dr. Singer's methodology and opinions, Claimant presented an additional report by, and the

deposition testimony of, Dr. Singer.[9]  Dr. Singer acknowledged Dr. Guidotti's focus on epidemiologic studies, but emphasized that epidemiology is only one component, among others, that he considers when offering an opinion in firefighter cancer cases. (*Id.* at 233-34.)  Dr. Singer explained that, when he described Claimant's firefighting work as a substantial contributing factor in Claimant's development of prostate cancer, he meant to convey his opinion that "but for the exposures to known human carcinogens encountered during [Claimant's] service, he would not have developed the cancer when it was diagnosed." (*Id.* at 235.)  In direct response to Dr. Guidotti's criticism that he failed to identify a specific carcinogen linked to prostate cancer, Dr. Singer stated that he did identify many specific carcinogens to which firefighters are exposed. (*Id.*)  He opined that, among these, "prostate cancer has been associated with arsenic, [Polycyclic aromatic hydrocarbons (]PAH's[)], and phthalates[,]" which are IARC Group 1 carcinogens, and he cited several scientific studies in support of that statement. (*Id.* at 235-36.)  He explained, however, that a focus on a single carcinogen may not be appropriate, given that exposure to multiple carcinogens (as occurs with firefighters) can produce a synergistic increase in cancer risk. (*Id.* at 235.)

Dr. Singer reemphasized what he views as a significant body of epidemiologic evidence of increased rates of prostate cancer among firefighters. (*Id.* at 235-36.)  In support of this view, he cited several meta-analyses of cancer among firefighters, including one analysis by Grace LeMasters, Ph.D., published in 2006 (LeMasters Report), which both he and Dr. Guidotti had discussed in their earlier reports and

---

[9] Dr. Singer's responsive report, dated December 19, 2012, can be found on pages 233-237 of the Reproduced Record.  His accompanying deposition testimony is summarized, along with his responsive report, in the WCJ's March 2, 2018 Decision in Finding of Fact ¶ 6 and can be found on pages 46-1024 of the Reproduced Record.

8

testimony. (*Id.*) On cross-examination, Dr. Singer admitted that some cases of prostate cancer in firefighters are not caused by work-related exposure, but by other factors. (*Id.* at 499-502.) However, he maintained his opinion that, for many firefighters, their exposure to carcinogens through their work contributes to their development of prostate cancer, including by causing them to develop it at an earlier age than they otherwise would. (*Id.* at 931.)

### 5. Report of Janet L. Stanford, Ph.D.

Finally, Employer introduced a report by Janet L. Stanford, Ph.D., an epidemiologist who studies prostate cancer.[10] Dr. Stanford explained that observational studies have identified several risk factors that are associated with prostate cancer. (*Id.* at 1434.) These "include age, race/ethnicity, and family history of prostate cancer." (*Id.*) The median age of diagnosis with prostate cancer is 67. (*Id.*) Diagnosis at a younger age does not necessarily suggest an environmental cause, because diseases with genetic causes tend to present at an earlier age. (*Id.* at 1435.) Dr. Stanford admitted that she is not an occupational epidemiologist qualified to address the connection between occupational exposures and prostate cancer. (*Id.*) She opined, however, that the literature she reviewed suggests that about 42% of prostate cancer etiology is related to genetics, while about 58% is related to environmental factors, such as occupational exposure, alcohol use, and smoking. (*Id.*) Prostate cancer is a complex disease that often has multiple factors in its causation. (*Id.*) These multiple factors—such as genetics and environmental exposure—can interact with each other, producing a causal effect greater or less than each produces individually. (*Id.*) The extent to which such interaction occurs in

---

[10] Dr. Stanford's report can be found on pages 1434-1494 of the Reproduced Record and is summarized in the WCJ's March 2, 2018 Decision in Finding of Fact ¶ 7.

9

prostate cancer cases has not been well studied. (*Id.*) Therefore, Dr. Stanford concluded, "it is possible to estimate a likelihood that an exposure" to carcinogens is associated with prostate cancer, but it is not possible definitively to prove that certain carcinogens cause prostate cancer. (*Id.*)

*B. March 2, 2018 WCJ Decision*

In the March 2, 2018 Decision, the WCJ found that Claimant did not establish that his prostate cancer was caused by his work as a firefighter and denied the Claim Petition. In doing so, the WCJ found Claimant's testimony wholly credible, noting that Employer did not dispute Claimant's description of his firefighting duties and experiences, presumably including the exposure to smoke and diesel exhaust of which Claimant testified. (Mar. 2, 2018 WCJ Decision, FOF ¶ 8.) Concerning the medical testimony, the WCJ found that Claimant's evidence did not establish that any IARC Group 1 carcinogens are known to cause prostate cancer. (*Id.* ¶ 9.) On this issue, the WCJ found Employer's medical expert witness, Dr. Guidotti, credible and Claimant's expert, Dr. Singer, not credible. (*Id.*) The WCJ explained:

> Dr. Singer mentions the [IARC] Group 1 carcinogens as cancer[-]causing agents, but his testimony on this issue is vague at best as [it] pertains to prostate cancer in general and [is] not credible to establish that prostate cancer is caused by Group 1 carcinogens. Dr. Guidotti explained in detail the different accepted scientific methodologies used in determining how to analyze whether a particular substance is a cancer-causing agent, and Dr. Singer did not use any of these methods but rather relied on articles and his own assumptions when assessing . . . claimants' affidavits in the various cases he reviewed. This Judge finds Dr. Guidotti's explanation as to the methodology to be used in analyzing whether a[n IARC] Group 1 carcinogen is a known cause of a particular type of cancer more credible than Dr. Singer's contrary opinions, to the extent any were expressed, because Dr. Guidotti is trained in epidemiology, has a degree in toxicology[,] and is board certified in internal medicine, pulmonary medicine[,] and internal medicine.

10

(*Id.*)  Based on her refusal to credit Dr. Singer's testimony, as described above, the WCJ concluded that Claimant failed to demonstrate that IARC Group 1 carcinogens have been shown to cause prostate cancer, and, thus, he was not entitled to the statutory presumption that his firefighting caused his cancer.  (*Id.* ¶ 10.)

The WCJ did not credit Dr. Singer's testimony that Claimant's exposure to carcinogens through his firefighting work was a substantial contributing factor in his development of prostate cancer.  (*Id.*)  Once again, the WCJ credited Employer's witness over Dr. Singer, noting Dr. Stanford's opinion that the established risk factors for prostate cancer are age, race/ethnicity, and family history.  (*Id.*)  The WCJ found specifically that

> Dr. Stanford is better qualified to answer the question of whether prostate cancer could be caused by firefighting than Dr. Singer, and her opinion that such causal connection has not been shown is more credible than Dr. Singer's opinion that Claimant's work is a substantial contributing causative factor in his development of prostate cancer.

(*Id.*)  The WCJ further found that Dr. Singer's medical "opinion has no credible scientific or epidemiologic basis."  (*Id.*)  Based on these findings, the WCJ concluded that Claimant failed to establish that he contracted prostate cancer as a result of his work and denied the Claim Petition.  (Mar. 2, 2018 WCJ Decision, Conclusion of Law ¶ 2.)

### C.  *December 24, 2019 Board Opinion*

Claimant appealed the WCJ's Decision to the Board, which affirmed.  The Board, noting that the WCJ credited the testimony of Dr. Guidotti and Dr. Stanford, declined to disturb those credibility determinations given a WCJ's discretion to accept or reject the testimony of any witness, including any expert witnesses.  Based on the WCJ's determination that Dr. Singer's testimony was not credible, the Board

11

determined that Claimant failed to meet his initial burden of proving that IARC Group 1 carcinogens can cause prostate cancer. The Board reasoned that, because Claimant failed to meet this burden of establishing general causation, the burden never shifted to Employer to rebut a presumption regarding the specific cause of Claimant's cancer. The Board concluded that, "as there was no credible evidence to establish Claimant's initial burden of proof, the WCJ's finding that Claimant failed to meet his burden entitling him to benefits for prostate cancer was supported by substantial, competent evidence." (Dec. 24, 2019 Board Op. at 14.) The Board also determined that, contrary to Claimant's argument, the WCJ did not capriciously disregard the LeMasters Report, on which Dr. Singer relied, given that the WCJ actually discussed it but declined to credit it along with Dr. Singer's other testimony. Claimant now petitions this Court for review.[11]

## II. PARTIES' ARGUMENTS

On appeal, Claimant argues that the Board and the WCJ erred by misinterpreting Claimant's burden of proof when analyzing the evidence in support of the Claim Petition. (Claimant's Brief (Br.) at 23.) Claimant acknowledges that, in seeking compensation for an occupational disease, as defined in Section 108(r) of the Act, 77 P.S. § 27.1(r),[12] he must make a threshold showing of general causation—in this case, that his type of cancer, prostate cancer, can be caused by an

---

[11] In reviewing a decision of the Board, "[o]ur review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated." *McDermott v. Workers' Comp. Appeal Bd. (Brand Indus. Servs., Inc.)*, 204 A.3d 549, 554 n.9 (Pa. Cmwlth. 2019).

[12] Section 108(r) establishes, as an occupational disease, "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the [IARC]." 77 P.S. § 27.1(r). Section 108(r) was added by Section 1 of the Act of July 7, 2011, P.L. 251.

IARC Group 1 carcinogen.  (*Id.* at 24.)  He asserts that he provided uncontradicted scientific evidence, *i.e.*, the testimony and opinion of Dr. Singer, and the LeMasters Report and other studies upon which Dr. Singer relied, showing that specific IARC Group 1 carcinogens are capable of causing prostate cancer.  (*Id.* at 24-27.)  Claimant insists that this evidence was sufficient to carry his initial burden, thus demonstrating that he suffered from an occupational disease.  (*Id.* at 27.)  Claimant then emphasizes that, by crediting Claimant's testimony, the WCJ accepted that Claimant established the other elements necessary to trigger an evidentiary presumption, pursuant to Section 301(f) of the Act, 77 P.S. § 414,[13] that his specific cancer was caused by his work.  (*Id.* at 27-28.)

Alternatively, Claimant argues that he established entitlement to the evidentiary presumption of compensability through Section 108(n) of the Act, 77 P.S. § 27.1(n),[14] by showing an association and causal relationship between the

---

[13] Section 301(f) was added to the Act by Section 2 of the Act of July 7, 2011, P.L. 251, and provides, in pertinent part, as follows:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer.  The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. . . .  The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks [after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease].

77 P.S. § 414.

[14] Section 108(n) establishes, as occupational diseases, "[a]ll other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the **(Footnote continued on next page…)**

13

occupation of firefighting and prostate cancer through the LeMasters Report. (*Id.* at 29-30.) Claimant contends that the WCJ ignored the LeMasters Report, which was clear error. Finally, Claimant argues that Employer's evidence did not identify a non-work-related cause of Claimant's cancer and, therefore, was not sufficient to rebut the evidentiary presumption applicable under the Act. (*Id.* at 31-34.) He claims, therefore, that the WCJ and the Board erred in denying and dismissing the Claim Petition based on Employer's evidence. (*Id.* at 35.)

Employer responds that this Court is bound by the WCJ's credibility determinations, including her decision not to credit Dr. Singer's expert opinion, and cannot overturn or disturb that determination. (Employer's Br. at 6.) Employer emphasizes that a showing of general causation, under Section 108(r) of the Act, is a necessary precondition to considering the rebuttable presumption provided in Section 301(f) of the Act. (*Id.* at 7-9.) Because the WCJ found that Claimant did not make the initial general causation showing, Employer argues, the rebuttable presumption was never truly an issue, and the burden never shifted to Employer to show a non-work-related cause of Claimant's cancer. (*Id.* at 5.) In other words, Employer takes the position that, because Claimant never credibly demonstrated that IARC Group 1 carcinogens can cause prostate cancer, his exposure to those carcinogens never became relevant, even if it was credibly demonstrated. (*Id.* at 10.) Employer asserts that the WCJ did not err or abuse her discretion in declining to credit Dr. Singer regarding Claimant's initial burden, and the Board did not err in giving deference to that credibility determination. (*Id.* at 12-13.) Employer does not address Claimant's argument that he demonstrated occupational disease under Section 108(n) of the Act.

industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. . . ." 77 P.S. § 27.1(n).

## III. DISCUSSION

To prevail on a claim petition, a claimant bears "the burden of establishing the right to compensation and all of the elements necessary to support an award." *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 754 (Pa. Cmwlth. 2002). Section 301(a) of the Act, 77 P.S. § 431, provides that "[e]very employer shall be liable for compensation for personal injury to . . . each employe, by an injury in the course of his employment . . . ." Section 301(c)(2) of the Act, 77 P.S. § 411(2), defines the phrase "injury arising in the course of his employment" to include an "occupational disease," as that term is defined under Section 108 of the Act. Thus, an injury satisfying the definition of "occupational disease" under Section 108 is a compensable injury under the Act. To assist claimants who assert they suffer from an occupational disease in demonstrating the elements necessary to support an award, the Act contains a generally applicable evidentiary presumption regarding the cause of a claimant's occupational disease. Section 301(e) of the Act, 77 P.S. § 413,[15] provides that

> [i]f it be shown that the employe, at or immediately before the date of disability, was employed in any occupation . . . in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

The definition of "occupational disease" was amended by Act 46 of 2011[16] to add Section 108(r), which expanded the term "occupational disease" to include "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the [IARC]." 77 P.S. § 27.1(r). Act 46

---

[15] Section 301(e) was added to the Act by Section 3 of the Act of October 17, 1972, P.L. 930.

[16] Act of July 7, 2011, P.L. 251, No. 46.

also added Section 301(f) of the Act, 77 P.S. § 414, which imposes additional conditions on the presumption of Section 301(e) as it relates to the occupational disease of cancer suffered by a firefighter. Under Section 301(f), a firefighter is entitled to benefits for the occupational disease of cancer, as defined in Section 108(r) of the Act, provided the firefighter can show: (1) employment for four or more years in continuous firefighting duties; (2) direct exposure to an IARC Group 1 carcinogen; and (3) the firefighter passed a physical examination prior to engaging in firefighting duties that did not reveal any evidence of cancer. 77 P.S. § 414. Once the claimant shows these elements and the presumption of causation applies, the employer can rebut the presumption through "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting."[17] *Id.*

Importantly, when evaluating whether a claimant has met his burden under the Act, "[t]he WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife*, 812 A.2d at 755. It is well-settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). Where the WCJ is required to assess the credibility of deposition testimony, the WCJ must articulate objective bases for crediting one witness's deposition testimony over another witness's deposition testimony. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053-54 (Pa. 2003).

---

[17] In addition to the three conditions discussed above, Section 301(f) requires the firefighter to have filed his claim within 300 weeks of his last day of employment as a firefighter in order to qualify for the rebuttable presumption provided in Section 301(f). Here, it is clear and undisputed that Claimant filed the Claim Petition within 300 weeks of his last day of employment as a firefighter.

## A. Section 108(r) of the Act

The Pennsylvania Supreme Court has clarified the process by which a claimant may avail himself or herself of the evidentiary presumption found in Section 301(f) based on a Section 108(r) claim. *See City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197 (Pa. 2018) (*Sladek II*). In *Sladek II*, the claimant had worked for Employer as a firefighter and brought a claim petition seeking compensation for malignant melanoma. In support of his claim petition, that claimant also introduced testimony by Dr. Singer, who opined that the claimant's exposure to carcinogens through his work for Employer was a substantial contributing factor in his development of skin cancer. *Id.* at 201. Dr. Singer also opined that malignant melanoma could be caused by the IARC Group 1 carcinogens arsenic and soot. *Id.* at 202. Employer introduced the testimony of Dr. Guidotti, who gave testimony very similar to his testimony in this case, criticizing Dr. Singer's methodology and opinions. Unlike in the instant matter, however, the WCJ in *Sladek II* credited Dr. Singer's testimony and opinions, declined to credit Dr. Guidotti's testimony, and granted the claim petition. *Id.* at 202-03. The Board affirmed the WCJ's decision, and Employer appealed to this Court. We vacated the Board's decision and remanded for further proceedings. We held, in part, that "[i]t was incumbent upon [the c]laimant to prove that his malignant melanoma is a type of cancer **caused by** the Group 1 carcinogens **to which he was exposed in the workplace**" in order to establish that his cancer was an occupational disease under Section 108(r) of the Act. *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 144 A.3d 1011, 1021-22 (Pa. Cmwlth. 2016) (en banc) (second emphasis added), *rev'd*, *Sladek II*. We also specifically rejected the Board's reasoning that the

17

claimant met his initial burden simply by demonstrating he suffered from cancer generally and had been exposed to at least one IARC Group 1 carcinogen.

Our Supreme Court reversed and remanded to the Board. *Sladek II*, 195 A.3d at 210. In so doing, the Court explained that the Act divides litigation by firefighters for cancer claims into "discrete stages." *Id.* at 207. First, the claimant must carry an initial burden under Section 108(r). This initial burden, which concerns general causation only, is not a heavy one, and the claimant need only "establish a general causative link between the claimant's type of cancer and a Group 1 carcinogen." *Id.* at 208. "In other words, the claimant must produce evidence that it is **possible** that the carcinogen in question caused the type of cancer with which the claimant is afflicted." *Id.* Next, the claimant must show that the claimant meets the other three conditions to the presumption in Section 301(f) of the Act, *i.e.*, four or more years of service, direct exposure to an IARC Group 1 carcinogen, and a cancer-free physical exam prior to engaging in firefighting work. *Id.* at 207. If the claimant makes these showings, the claimant benefits from the presumption in Section 301(f), and the burden shifts to the employer to prove that the claimant's cancer was caused by something other than the claimant's work as a firefighter. *Id.* The Court noted that "epidemiological evidence is clearly relevant and useful in" evaluating general causation at the initial burden stage. *Id.* at 208.[18] The Court therefore directed the Board on remand to determine whether Dr. Singer's testimony satisfied the standard

---

[18] A majority of our Supreme Court joined in this portion, *i.e.*, Part I, of the *Sladek II* opinion regarding the initial burden stage. *See Sladek II*, 195 A.3d at 199 ("Justice Donohue delivers the Opinion of the Court with respect to Part I [(concerning a claimant's initial burden of demonstrating an occupational disease under Section 108(r))], announces the judgment of the Court, and delivers an opinion with respect to Part II [(rebutting the presumption of compensability under Section 301(f)),] joined by Justices Baer and Todd[.]" (italics omitted)).

set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923),[19] and stated that if it did not, the claimant could not carry his initial burden as to general causation under Section 108(r) of the Act. *Sladek II*, 195 A.3d at 210. Crucially, for the instant case, the Court also noted that, even if Dr. Singer's testimony satisfied the *Frye* standard, the fact finder was free to find "that Dr. Guidotti's opinion is more credible on the question of general causation." *Id.* In that situation, "the epidemiological evidence offered by [Employer] through Dr. Guidotti would carry the day without the burden of proof . . . ever shifting to [Employer] to prove specific causation." *Id.*

We recently applied the analytical framework from *Sladek II* in *Deloatch v. Workers' Compensation Appeal Board (City of Philadelphia)*, 224 A.3d 432 (Pa. Cmwlth.), *appeal denied*, 237 A.3d 973 (Pa. 2020). The claimant in *Deloatch* sought compensation for lung cancer pursuant to Sections 108(r) and 301(f) of the Act. Just as in *Sladek II*, Dr. Singer testified on behalf of the claimant, and Dr. Guidotti testified on behalf of Employer. Additionally, Employer presented the medical report of Howard Sandler, M.D., a physician specializing in occupational and environmental medicine, who disagreed with Dr. Singer's conclusion that there is a causal link between firefighting and lung cancer. *Deloatch*, 224 A.3d at 436-37. Dr. Sandler admitted, however, that there was sufficient scientific evidence to establish a causal link between diesel exhaust (an IARC Group 1 Carcinogen) and lung cancer. *Id.* at 436. The WCJ declined to credit Dr. Singer's testimony and credited Dr. Guidotti and Dr. Sandler's opinions instead. Based on her decision not to credit Dr. Singer's testimony about a causal connection between firefighting and cancer, the

---

[19] As our Supreme Court stated in *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1043-44 (Pa. 2003), "[t]he *Frye* test . . . is part of [Pennsylvania Rule of Evidence] 702[, Pa.R.E. 702]. Under *Frye*, novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community."

WCJ concluded that the claimant was not entitled to the presumption in Section 301(f) of the Act. *Id.* at 437. The claimant appealed to the Board, which reversed and remanded the matter to the WCJ. On remand, the WCJ issued a new decision granting the claim petition as directed by the Board, and Employer appealed to the Board, which reversed based on its application of *Sladek II*. The claimant then petitioned this Court for review, arguing that the Board's second decision was in error. In reviewing the claimant's arguments, we observed that, although the WCJ found Dr. Singer's testimony not credible, the WCJ found that the claimant was exposed to IARC Group 1 carcinogens, including diesel fumes/exhaust, in the course of his work as a firefighter, and expressly credited Dr. Sandler's opinion that independently established that one of those IARC Group 1 carcinogens (diesel exhaust) could cause lung cancer. *Id.* at 441. We also held that Employer failed to offer any evidence showing that diesel exhaust does not cause lung cancer. Based on the credited evidence, we held that the claimant had met his initial burden of showing general causation under Section 108(r) of the Act. *Id.* Thus, our decision in *Deloatch* confirms that, under *Sladek II*, the question of whether a claimant meets the initial burden of proof on general causation may be resolved solely on a WCJ's credibility determinations.

Here, Claimant argues that the WCJ and the Board imposed a burden of proof greater than Section 108(r) of the Act requires. He insists that he carried his initial burden with respect to general causation, thus demonstrating that he suffers from an occupational disease. Claimant maintains that he presented Dr. Singer's uncontradicted testimony as to general causation, including Dr. Singer's direct opinion that certain IARC Group 1 carcinogens can cause prostate cancer. He also asserts that the LeMasters Report supported his claim but was ignored by the WCJ.

20

We disagree with Claimant's characterization of his evidence as uncontradicted. Dr. Guidotti directly testified that Dr. Singer's method for reviewing the various epidemiologic studies Dr. Singer cited was not a sufficient method for determining general causation, thereby challenging Dr. Singer's general causation opinion. (R.R. at 1084-85.) More critically, the WCJ, in her discretion, did not credit Dr. Singer's testimony, which was based, in part, on the LeMasters Report, and this is not subject to this Court's review. *See Rife*, 812 A.2d at 755 ("The WCJ is the ultimate fact finder and has complete authority for making all credibility determinations."). Instead, the WCJ credited Employer's witnesses, Dr. Guidotti and Dr. Stanford, both of whom disputed Dr. Singer's general causation opinion, and Dr. Stanford's opinion contradicted the LeMasters Report. (Mar. 2, 2018 WCJ Decision, FOF ¶¶ 9-10.) We may not disturb a WCJ's factual findings so long as they are supported by substantial evidence.[20] Here, Claimant does not challenge any of the findings on the basis they lack substantial evidence. Regardless, the WCJ's findings are supported by substantial evidence.

Moreover, the WCJ provided a reasoned explanation for her decision not to credit Dr. Singer's testimony. She explained that her decision was based on Dr. Singer's lack of training in epidemiology, the vagueness of his testimony, and his failure to identify an accepted methodology for demonstrating general, as opposed

---

[20] Substantial evidence is defined as "relevant evidence that a 'reasonable person might accept as adequate to support a conclusion.'" *Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (quoting *Wieczorkowski v. Workers' Comp. Appeal Bd. (LTV Steel)*, 871 A.2d 884, 890 (Pa. Cmwlth. 2005)). When reviewing a WCJ decision for substantial evidence, we "must view the evidence in the light most favorable to the" prevailing party and draw all reasonable inferences in the prevailing party's favor. *Id.* It is important to note that "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted).

to specific, causation. (FOF ¶ 9.) The requirement for a reasoned decision "does not permit a party to challenge or second-guess" a WCJ's credibility determinations because "determining the credibility of witnesses remains the quintessential function of the WCJ as the finder of fact." *Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.)*, 114 A.3d 464, 470 (Pa. Cmwlth. 2015).

Here, unlike in *Sladek II* and *Deloatch*, none of the testimony credited by the WCJ, *i.e.*, the testimony of Claimant, Dr. Weaver, Dr. Guidotti, or Dr. Stanford, established that any IARC Group 1 carcinogen can cause prostate cancer. As we have discussed, the WCJ's decision not to credit Dr. Singer's testimony was an exercise of discretion accompanied by a reasoned explanation, and it must, therefore, stand. We conclude that Claimant has not met his initial burden of demonstrating general causation under Section 108(r) of the Act, and he has not established that his cancer is an occupational disease under that section. Because Claimant did not meet this initial burden, his demonstration of the other factors under Section 301(f) of the Act does not entitle him to the presumption found in that section, and the Board did not err in declining to apply that presumption. *See Sladek II*, 195 A.3d at 207; *Deloatch*, 224 A.3d at 440. Accordingly, the burden never shifted to Employer to rebut the presumption that Claimant's cancer was caused by his work. *Sladek II*, 195 A.3d at 210.[21]

---

[21] Because Claimant did not show that he suffers from an occupational disease, we do not consider his arguments concerning subsequent steps in the analytical framework laid out in *Sladek II*, including demonstration of the factors in Section 301(f) of the Act or Employer's rebuttal of the presumption.

22

### B. Section 108(n) of the Act

Our analysis does not end here because "the inability of the firefighter to prove that his cancer is an occupational disease under Section 108(r) of the Act does not mean that he cannot pursue a claim for compensation." *Demchenko v. Workers' Comp. Appeal Bd. (City of Phila.)*, 149 A.3d 406, 419 (Pa. Cmwlth. 2016), *appeal denied*, 200 A.3d 940 (Pa. 2019). Section 108(n) of the Act includes in the definition of occupational disease "[a]ll other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population." 77 P.S. § 27.1(n). This "catch-all provision" allows claimants in cancer cases to claim the general evidentiary presumption as to causation even if they cannot do so under Section 108(r) of the Act. *Demchenko*, 149 A.3d at 417 n.20. The presumption triggered by application of Section 108(n) of the Act is the general evidentiary presumption in Section 301(e) of the Act, which applies to all occupational diseases and to claimants in all types of work. *Id.* at 416-17, 419-20. When proceeding under Section 108(n), the claimant is required to prove, *inter alia*, that the type of cancer from which he suffers is "causally related to [his] industry or occupation." 77 P.S. § 27.1(n). This is a general causation inquiry, which, once the elements in Section 108(n) are shown, results in application of the presumption in Section 301(e). *See Demchenko*, 149 A.3d at 419-20 (noting that the burden under Section 108(n) relies on "'general causation' principles").

Claimant argues that he established that his cancer fell within this catch-all provision. However, Claimant's argument under Section 108(n) of the Act lacks merit. We have repeatedly considered matters in which the claimant failed to obtain

23

the special presumption under Section 108(r) of the Act and sought relief in the alternative under Section 108(n). *See Capaldi v. Workers' Comp. Appeal Bd. (City of Phila.)*, 152 A.3d 1107, 1117 (Pa. Cmwlth. 2017); *Demchenko*, 149 A.3d at 419. In both of those cases, the claimant offered Dr. Singer's testimony to show a general causal connection between firefighting and the type of cancer the claimant suffered, and the WCJ specifically rejected Dr. Singer's testimony as to causation. *Capaldi*, 152 A.3d at 1109, 1112-13; *Demchenko*, 149 A.3d at 409-10, 414. In both cases, we concluded that, because the WCJ rejected the medical evidence on which the claimant must rely to make a showing under Section 108(n), the claimant could not prevail under that section. *Capaldi*, 152 A.3d at 1117; *Demchenko*, 149 A.3d at 420. The same applies here, where the WCJ rejected Dr. Singer's causation testimony. Accordingly, Claimant cannot demonstrate his entitlement to benefits under Section 108(n).

## IV. CONCLUSION

For the foregoing reasons, Claimant did not satisfy his initial burden of demonstrating that his cancer is an occupational disease under the Act or that his cancer was caused by his work and, therefore, the Board did not err in affirming the WCJ's denial of the Claim Petition.

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Malone,                              :
               Petitioner          :
                              :
               v.          :   No. 22 C.D. 2020
                              :
Workers' Compensation Appeal             :
Board (City of Philadelphia),            :
               Respondent        :

## O R D E R

**NOW**, January 6, 2021, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge